Okay, the next case is 3M INNOVATIVE Properties Company v. TREDEGAR. Did I pronounce that correctly? Yes, you did. Okay, TREDEGAR Corporation and TREDEGAR Film Production Corporation. All right, Mr. Cohn, do you want five minutes for rebuttal? Yes, yes, Your Honor. Okay. Good morning, and may it please the Court, Jonathan Cohn for the appellate 3M. Did this report impose artificial limitations on four claim terms? which relate to a laminate that helps diapers fit snugly around the person wearing them. The first three of these terms, ribbon and continuous, involve everyday words with everyday meanings, which are consistent with how those words are used in the claims and specifications themselves. For instance, a ribbon need not be only one inch wide. A ribbon can be more or less than one inch. Next, for two layers of this laminate to be in continuous contact, all that matters is that the layers have uninterrupted contact. It does not matter what's going on inside one of the layers underneath the point of contact. You can see that full surface contact is necessary, right? Well, that's the phrase. Continuous contact is necessary. That includes full surface contact, which is Figure 22. And then Figure 23 involves continuous contact with cohesive failure. And our position, Your Honor, is that Figure 23, cohesive failure, is included in the phrase continuous contact. Because the cohesive failure is of the core. It's inside the core. It's internal fissures, which Predebar agrees is a synonym for cohesive failure. The failure is of the core, inside it. To use an analogy, take two wood blocks and put them end-to-end. Those two wood blocks are in continuous contact, regardless of whether the blocks are hollow on the inside. As long as they have uninterrupted contact, they're in continuous contact. And that's analogous, Judge O'Malley, to cohesive failure, which is a fissure or crack inside the core. The two layers, the core and the skin. I understand your argument here, but didn't the trial court feel that regardless of whether you could make this argument, that you had given it up during the prosecution of that? That is what the district court felt, Your Honor. And we respectfully disagree with the district court because we never gave up cohesive failure. What we gave up was substantially continuous contact. We were talking on page 1280 of the Joint Appendix of less than continuous contact between the layers. That word appears in the bottom of 1280, between the layers. We said it has to be continuous between the layers. But we never disavowed cohesive failure. Would it be fair to call that adhesive failure that you gave up? Yes, Your Honor. We gave up adhesive failure, which is figure 24. We did not give up cohesive failure, which is figure 23. It was, again, between the layers. It has to be continuous, not inside the layers. We never even mentioned cohesive failure on page 1280, or for that matter, or the other prosecution history that's cited in the Joint Appendix. We've never mentioned cohesive failure, let alone disavowed cohesive failure. We were talking only about less than continuous contact between the layers. So the question is whether you have made a clear and unmistakable disclaimer in your argument you didn't. Absolutely, Judge Fletcher. That's exactly correct. There was no disclaimer, let alone a clear disclaimer. We said nothing about cohesive failure. We didn't give it up. What we gave up was something that's less than continuous contact between the layers. What was the point of the discussion about substantially continuous contact? Because of the other figures, there clearly wasn't continuous contact and not even substantially continuous contact, right? That's correct, Judge O'Malley. So the first amendment on page 1257 of the Joint Appendix, we said substantially continuous contact is clear enough to give up the adhesive failure to which Judge Plager referred. It's enough to distinguish Hazelton. And then 1268, the examiner said, no, that's not good enough. Hazelton has random spaced contact areas. Substantially continuous contact is not good enough to disavow it. So in 1280, we were more clear, and we clearly disavowed Hazelton. We said that's our intent, to disavow Hazelton, to distinguish Hazelton. And so to distinguish Hazelton, make it more clear, we dropped the word substantially. But that entire debate... You didn't think that the word substantially covered the non-adhesive contact figure, correct? Correct, Your Honor. All right, so what was the point of the word if you thought you had continuous contact in the other two figures? We thought substantially continuous contact was clear enough to distinguish Hazelton, the prior art. We thought that was good enough. But the examiner said, no, it's not good enough. So we dropped it to make it more clear. But the specification makes clear that continuous contact, not substantially continuous contact, but a narrower continuous contact includes cohesive failure. So we dropped that word to more clearly distinguish Hazelton, but we never gave up cohesive failure. We never disavowed cohesive failure. So you're saying that using the word substantially was meaningless as far as your spec? We thought substantially gave us a bit more freedom. So something was substantially continuous contact, but not continuous contact. It would still be included. We did give that up. But by giving up that apple, we did not disavow the orange of cohesive failure. So we gave something up. That's correct, Judge O'Malley. What we gave up was less than continuous contact, that is substantially continuous contact. We never gave up cohesive failure, which the specification makes clear is a type of continuous contact. It's a variation of continuous contact. Your appendix, page 198, columns 13, 8 to 17, makes clear that cohesive failure is a variation of continuous contact. We never gave that up, Your Honor. Okay. Let's move on to continuous microtextured skin layers. If you want to have your rebuttal time, I want to make sure that we talk about these other issues. I understand that you're grammatical argument, but what does over-substantially the entire laminate mean? Does over-substantially the entire laminate modify microtexturing, or does that modify the continuous skin layer? It modifies the continuous skin layer. And the action here, the issue with respect to this claim term, Judge O'Malley, is what continuous modifies, whether it modifies skin layer or whether it modifies microtextured. Grammatically, the modified skin layer is an adjective, not an adverb. What I think is also decisive is the specification itself. And I respectfully refer the Court to page 197 of the Joint Appendix, column 10, line 11, which uses the phrase continuous microstructured surface. This is language that Kredegar latched onto and the District Court cited. Continuous microstructured surface. Microstructured means the same thing as microtextured. And the question there is, what does continuous modify? Part of my problem is looking at the Court's time construction. While at one point it does say that the Court thought Kredegar's argument was a better one, it seems that the Court built in to its construction this over-substantially the entire laminate, and it's not clear to me whether or not the Court thought that that language was being used to modify microtexturing. In other words, I'm not sure the Court required continuous microtexturing. It's not clear from the actual construction. Well, I think it is clear on page 52 of the Court's decision where it says the microstructuring is continuous. And then on 53 the Court said is adopting Kredegar's position, which was continuously microtextured. But if this Court thinks the District Court did not hold that and agrees that the microtexturing need not be continuous, we're okay with the Court saying that, and that continuous does not modify microtexturing. And further support for that position is the fact that the phrase continuous microstructured surface, which appears in the Kredegar patent, also appears in the Hanschen specification on page 97. And everyone agreed that the microtexturing in Hanschen is not continuous because you have these zones. And you have the same... What would it make a difference if we concluded that what the District Court said was not continuous? If the District Court said that the microtexturing, if not continuously, then at least over substantially the entire laminate? That would be a huge difference, Your Honor. And if this Court were to hold that warranting a reversal or a remand, we'd be okay with that on remand. The important question is, must the microtexturing be continuous? And I agree with Your Honor's suggestion that the microtexturing need not be continuous. That was the claimed term, though we agreed in our brief that substantially is another word that could describe it. The microtexturing can be substantial, but it need not be continuous. Could you address the preferential activation zones construction? Yes, Your Honor. And with respect to preferential activation zones, the District Court committed two related errors. First, it required two-step, a two-step process. One step's not good enough. And second, it required the laminate to be stretched as a whole. I say these errors are related because they both overlook the same phrase in the specification, controlled localized stretching. The specification makes clear that controlled localized stretching is one way of creating these preferential activation zones. And by definition, controlled localized stretching involves stretching, which means that you can create the zone in the same process that you stretch the The word identifiable in that construction matter? It doesn't add anything except for the baggage that Kredegar tried to attach below. Kredegar below... Doesn't it create the two-step process that the court uses? Exactly, Your Honor. In the abstract context, identifiable does not mean that. You're completely correct that Kredegar said it's a two-step process, linked it up with identifiable, and that's the error. Kredegar's entire position below, and it's somewhat different here, but below was, you have to have this two-step process. Indeed, Kredegar in the Markman hearing used the phrase two-step or two-step process eleven times in that one-and-a-half or two-hour hearing. That was the basis of their position, and there's absolutely nothing in the patent, the claim, the specification, the prosecution history requiring a two-step process. If we agree with the trial courts that it has to be predetermined, that the zones have to be predetermined, then does the rest of your debate with the patent construction matter? Well, predetermined by itself is not a problem for us. Again, it gets back to Judge Reyna's suggestion before that Kredegar's attaching baggage is a two-step process. Predetermined by itself is fine. That appears in the specification. It appears in the abstract. You can have predetermined zones with a one-step process, like Kredegar's I&G process. It's one step. You create the zones in the same process you stretch them. It's predetermined. Once you put that laminate on the roller, you know precisely where the zones are going to be because you can line up the teeth, the I&G teeth in the I&G process. So it's predetermined, but it's still a one-step process. You still have only one step where the teeth go crunch on the laminate, sort of like a bread slicer. It's one step. You still know where the slices are going to be. So predetermined by itself is not a problem as long as the court doesn't detach the baggage of a two-step process. And there's no basis for the two-step process requirement, just like there's no basis for the as-a-whole requirement. Controlled localized stretching, by definition, has localized stretching, not stretching as a whole. The stretching need not be as a whole. The stretching need not be uniform. It's localized stretching. The specification also speaks of stretching exclusively in selected regions, exclusively selected regions. Page 95 of the Joint Appendix. Again, stretching exclusively in selected regions is the antithesis of stretching as a whole, the antithesis of uniform stretching. So the district court committed two errors in construing preferential activation zones. First, it had the two-step requirement, which it put into the word identified and predetermined. And second, it required stretching as a whole or uniformly. And neither limitation has any basis in the claims, the specification, or the prosecution history. So this court should reverse on that. Okay, you're well into your rebuttal. We'll give you a total of four minutes for rebuttal, and we'll add two minutes to Mr. Verhoeven's time. Thank you. Good morning. I speak to the court. Charles Verhoeven, representing CreditR. What we have before the court on this appeal is a very carefully reasoned, 55-page detailed opinion by the district court, who was in the process conducting a very extensive, virtually day-long hearing on the issues. We would submit that the court got it right, and the four issues that are raised by the appellant do not merit reversal. If I could go straight into it, Your Honors, and start with continuous contact. Can we just do ribbon real fast? Sure. Where does the one-inch come from? Well, there was a The short answer is it was consistent with the intrinsic evidence. If you're asking me, can I point to a place in the intrinsic evidence that says one-inch, I have to be keen, Your Honors, I cannot. I mean, even that older patent doesn't say one-inch. It does not. However, the intrinsic excuse me, the intrinsic evidence that does discuss all of those ribbons are well below that And did you suggest the one-inch to the court? We did, and you know, we need to put all of this in context because before the district court the primary issues were these other three terms. Yeah, I mean, it's clear that this was sort of a 185-page transcript of the hearing below. And it got one paragraph in the opinion. Exactly. But you're saying there's no support in the intrinsic evidence for one-inch? Oh, I think there's support where our proposal which the district court adopted, because all the intrinsic evidence is less than one-inch, and so all the intrinsic evidence that uses ribbon would fall within the court's construction, Your Honor. When you say all, there really wasn't much, right? There wasn't much. I think in the briefing we're talking about two references, Your Honor. But here's the reason we think it needs to be... Why did you want that? Because we need... Pulled out of nowhere one-inch figure to get into... We were trying to provide some boundary so that as Your Honors know, the purpose of claim construction is trying to avoid disputes on the scope of the claim because that's the court's job and not the jury's job. In this case, what is a ribbon? And how is it different from a film? We tried to come up with something, although there wasn't much in the intrinsic evidence, Your Honors. We tried to come up with something so that we could say, this is the scope of the claim. And what the problem we had with what the appellant did, Your Honors, is that they basically recursively defined it as a strip. And so, it's really, in our view, kicking the can down the road so that experts will battle over whether something's a strip or something's a ribbon, and we don't have clarity as to what the boundaries of that are. So we're talking more than one inch is... In the context of this particular patent, Your Honors, there are strips that go on the diaper that connects it from the back to the front. So, obviously, you put a ribbon on the Macy's at Christmas time, it's going to be wider than one inch, but we're not talking about Macy's or this patent. We're talking about specific technologies that a person of ordinary skill would understand. My only point, Your Honors, I don't want to stress the one inch too much. The point I'd like to make on the ribbon, and move on if I may, is that we believe it should be construed in a way that's meaningful. And the proposed construction that was offered by the plaintiff, we did not think was meaningful. It's just kicking the can down the road so that they can then argue in front of the jury. Counselor, I colloquy raises a question I need help on. Exactly, there's four claim construction issues before us. Correct, Your Honor. What's the consequence of our, say, reversing two of the four, or one of the four, or three of them? The answer, I'll try to be a good memory, but I think I know the answer. I refer to the preferential activation zones as TAS, so I may say that just in short, if you don't mind, Your Honor. On that one, if you affirm, those patents are not infringed. It's dispositive. On the other two issues, the continuous contact and the continuous microstructure, either one of those would also, I believe, largely or 100% be dispositive. On Riven, it may affect some of the accused products, but not others. So Riven is not, as you can see from the record, it wasn't focused on. But so the answer is, if we affirmed on, say, the other three, Riven becomes irrelevant? I believe that the case would be over, essentially, because after this construction, you saw that the appellate stipulated the non- infringement, and I think those other bases, if you affirmed on those three bases, that would affect them. And the basis zone relates to only one category of patents, and the other two, the other three, relate to that? Krieger. That's correct, Your Honor. Now, real quickly, if I could go to the other Krieger constructions of continuous contact, Your Honor, you asked the question, is this essentially a prosecution disclaimer issue? And it sort of is, but it sort of isn't, Your Honor, because what happened, if you look at the prosecution history, is to traverse the Hazleton prior art, the applicant amended substantially continuous, and then was rejected further and had to amend again. Do you agree that Hazleton does not disclose within Figure 23? I disagree, and I wanted to let me go to Figure 23 and then I'll come back. Figure 23 is really important on this issue, Your Honors, and if you look at it as a patent, I don't know if you have a clear picture of one or not, that the entire argument on appeal that Appellant is making is a repackaging, a retread of what they did below. And all of a sudden, for the first time on appeal, they're talking about Figure 23 as if, with no evidence to the record and no citation, they're talking about Figure 23 as if it has continuous contact between the layers. And they invent this argument that's never below called internal fissures within the core and say, you should adopt our interpretation of Figure 23 that it has continuous contact and that the areas where there's not contact are internal and therefore you should provide this very extensive, non-plain meaning construction of continuous contact. Well, the problem is, Your Honors, the entire argument, the entire argument rests on a false factual premise. Look at Figure 23 and you can see with your own eyes that there is not continuous contact between these layers. You look on the left side. They don't argue that there's continuous contact between the layers, right? Oh, yes, that's what they're arguing. I believe that's their argument. I believe what they're saying is we're going to say yes, you have to have full, 100% surface contact just like the court did. But, and this is where the long definition comes in, you should interpret Figure 23 to be to meet that full surface contact. You can ask them, but that's what I got from their briefs. They're saying that cohesive failure does not occur in the contact between the layers but it occurs inside the core layers. Right, right. Now, if you take a look and they characterize that as being illustrated in Figure 23. Well, if you look at Figure 23, it's plainly not the case. Figure 23, just take a look on the left-hand side of the figure, you can see separation very clearly, two places with the naked eye. So there is no continuous contact. There is non-contact areas there, and the factual characterization of Figure 23 in the appellate brief is simply wrong. Well, why, I mean, why does that matter for the claim construction? I mean, if the word continuous contact means full surface contact, and they stipulate to that, then why can't you just discuss Figure 23? I'm sorry to interrupt. They don't because they stipulate to that, but if you look and that brings me back to, they don't say that this should have a special meaning. They don't say that they acted as their own lexicographer. They say, use the plain meaning of continuous contact. But then when you look, Your Honors, at their proposed construction, the course construction is simply full surface contact, plain meaning. Their construction, quote, the elastomeric layer fills the folds of the microtexture's skin, comma, which includes instances where the elastomeric layer undergoes cohesive failure under the folds of skin. Right, but they the problem is the court's construction was full surface contact and that excludes Figure 23. Why do you need the exclusion portion of the construction? If they agree it's full surface contact, and you agree it's full surface contact, why couldn't it just be full surface contact and you can argue whether or not. Absolutely agree with that, Your Honor, and that's what the court construed. What I just read you is their construction. Right, but I'm saying that the court also went on to say that it necessarily excludes Figure 23. And why was that necessary? Well, there's clearly, if you look at the prosecution history, Your Honor, a course of conduct where they tried to get 23 in, and they tried to do that through the use of substantially continuous, and they referenced Figure 23 in the prosecution history as being included within their substantially continuous, if Your Honor will recall from the record. And then the examiner said no, it has to be completely continuous, and they accepted that as the bargain for getting their patent. And now they're coming back having given up substantially continuous, which is 23. If you look at 24... What I guess I'm trying to understand is you're asking us to construe continuous contact, to be full surface contact, and then you're asking us to construe full surface contact to necessarily exclude Figure 23. You're asking for both steps, right? Well, I think that necessarily the second step follows from the first because you just look at the figure and it doesn't have full surface contact. But, so I'm not sure that it's a big step. It's showing, and of course often in my experience, Your Honor, during claim construction, they'll have the construction but they also have a discussion which talks about, it elaborates and brings life to that construction and clarifies issues so that we don't have claim construction issues later unnecessarily through interpretations of the claim construction and what not. The problem is that the court didn't make a factual finding that there is not full surface contact in 23. The court made a finding that 23 was disclaimed because of this step. Because they were required to get rid of it substantially. But the court never made the finding that you're saying is a fact here. And obviously they dispute that fact. By being forced to drop substantially. I mean, if you look at prosecution history and follow it, and I'm not going to go into the weeds on that. I'll just summarize. If you have questions, I'll answer, Your Honor. But, they first amended to add substantially continuous and in their remarks section when they did that preliminary amendment, Your Honor, they stated this would cover 22 and 23 and exclude 24. Now, if you look at 22, 23, 24, 22 is full surface contact without any cohesive failure. 23 is substantially continuous contact with cohesive failure. And 24 is blanking on the word they used, adhesive failure. Now, it's very clear when you look at these figures and look at what they said and then what happened with the examiner rejecting substantially continuous contact, that the examiner said, you can't have 23. You can't have a situation that's wishy-washy here, where you have some contact and not others. Hazleton discloses intermittent contact or substantially continuous contact. Isn't that really the issue? It seems to me that 3M is arguing when you look at cohesive failure and you look at figure 23, that there's continuous contact between the core and the outer layers. You do have those peaks and valleys, those features, but there is still continuous contact between the core and the layers. I'm sorry, which figure are you looking at? Figure 23. No. On the left side, for example, it's most easily seen on the left side. There's two folds there, and there's no contact between the skin layer and the core in the middle of those folds. It's a little less clear on the right side, but you can also see gaps in the contact on the right side as well. This is what Hazleton discloses. If you go look at the figures in Hazleton, they disclose these very same fold structures, Your Honor. The distinction from Hazleton, I would submit, Your Honors, was to say, first they tried to say, everything except adhesive failure, and that means substantially continuous, and the board said no. It has to be continuous or you don't get  continuous. Now they're saying to the district court and to this meeting, of continuous contact. Well, that's full surface contact. It's not this long, lengthy discussion where if you give them this construction, Your Honors, what they're going to do is they're going to say, well, the appellate court said cohesive failure equals full surface contact. So regardless of whether these things are contact or not, the court's already ruled, because the court said cohesive failure. And the argument they make in their briefs is premised on the assumption that the cohesive failure is entirely internal within the court. There's not a single citation to any evidence of that by the appellants. And if you look at Figure 23, you can see it's just not true. So the factual assumption underlying their construction and their interpretation of this prosecution history is belied by just  So I don't have to be an expert to see there's no contact there. Can we move on to the continuous microtexturing before you? Yes, Your Honor. Do you heard my questions to your friend on the other side? It's hard to exactly tell. I mean, the court said it was about linear construction,  Yeah. As I understand it, I could be wrong, Your Honor. I thought the term to be construed was the entire phrase, continuous microtextured skin layer over substantially the entire laminate. So I guess my response, I was thinking how I would answer that question when you asked it, would be the first response would be, you need to look at the whole phrase. And when you do that, it's clear whether you're focusing on continuous microtexture or the phrase over substantially the entire laminate. Both of those support the court's construction that the microtexturing is continuous on the skin surface. Well, there's no doubt that the skin surface covers the entire laminate, correct? Yes. So, substantially the entire laminate. In other words, is it possible that what the court was really saying is not that the word continuous modifies microtexturing, but that over substantially the entire laminate is what modifies microtexturing? I think it is. I think they both support that construction. And if you look at all the intrinsic evidence, and not just the claims, I think it becomes a undisputable conclusion. And your opposing counsel said they'd be happy if microtexturing is over substantially the entire laminate. I'm not sure I heard them say that, but I can confer with our folks and see if they if actually saying that that's what they're agreeing to, maybe we can confer and reach an agreement on that. I don't know, Your Honor. But I do want to, if I could really quickly address this grammar point that they're making. I disagree with that strongly. And all you need to do is think about, well, first of all, I don't disagree with the statement, the adjectives modifying noun. But, we're talking about the same noun. So, you've got two words that are both adjectives used together, and the suggestion they're making is that a person of ordinary skill, looking at that, would not think those go together and both modify the noun. Of course they do. So, the noun is, let's call it skin layer, you can argue maybe it's just layer, but let's call it skin layer. It's microtextured. It's not partially microtextured, it's microtextured. And it's continuous. And it's over, as Your Honor said, over substantially the entire laminate. Using their argument, just to give you some examples, continuous leather skin layer. They would say it doesn't have to be all leather. Numerous confidential documents. They would say that the confidential documents don't have to be numerous, it's just numerous documents. These are nonsensical readings of everyday phrases that are similar, adjective-adjective noun. So, taking a wooden rule and arguing for a non-common sense application of it, it doesn't make any sense. Their examples and their brick house, we're not talking about a house, we're talking about a very specific layer. And we're characterizing that layer, it has to be continuous and it has to be microtextured. If you were to say, instead of brick house, a brick layer, continuous brick layer, you wouldn't say that part of it can be plastic. It's a continuous brick layer. They also use waterpark. They say, well, it doesn't have to all be water. We're not talking about a park, we're talking about a specific layer. And if you were to take water, in that example, a continuous water layer, you wouldn't think that that would allow the deposition of solids within that layer. It's a continuous water layer. We can play word games with the abstract plain language all we want, but when you look at the intrinsic evidence, really quickly, you'll see, Your Honor, in the specification, at column 10 and column 12, when we start in our brief, it very clearly says it's over the whole surface. And in the prosecution history, in two different places, Your Honor, with respect to the distinction of Hanschen and the distinction of Guest, they both, they repeatedly said, distinguished these inventions in that their microtexturing is over substantially the entire surface. Thank you very much, Your Honor. Mr. Cohn. Your Honor, two quick points. First, on continuous contact, the analogy is the woodblock. The two woodblocks touching each other are in continuous contact, regardless of what's going on. Do you agree that figure 23 doesn't actually show continuous surface contact? No, Your Honor. We, it explains this on page 16 of our brief,  of figure 23 shows cohesive failure, because the coordinate scale is not cohesive. Right. What about the left-hand side? The left-hand side, we say in footnote 9, does not show cohesive failure. We say in footnote 9, that shows adhesive failure. It's the right-hand side that shows the cohesive failure, because it's continuous contact on the right-hand side, and the crack is inside the woodblock. So, you want us to say that when the court said that you disclaimed figure 23, that you only disclaimed half of figure 23? Figure 23, the specification makes this clear. Cohesive failure is shown in figure 23. We don't have to discuss whether figure 23, the entirety, is in or out. All that matters is whether cohesive failure is in or out, and the specification. And what did Hazleton deal with it? Adhesive failure or cohesive failure? Hazleton is adhesive failure, not cohesive failure. Cohesive failure is of the court. The crack is of the court. I refer Your Honor to page 194, column 6, line 36. Cohesive failure is a variation of continuous contact. Page 198, column 3. But you agree that the left-hand side of figure 23 shows non- cohesive contact, right? Absolutely, Your Honor. And all that matters here is whether cohesive failure, which is a synonym for internal fissures, as Predegar says in page 21 of their brief, the issue is whether cohesive failure is excluded. Cohesive failure is not excluded. None of the prosecution history discusses, let alone clearly, that it has cohesive failure. Can you answer Judge Predegar's question about how meaningful these four terms are to the ultimate resolution of this case? Yes, Your Honor. This Court has to address all four, even ribbon, because Claim 9 of the 034 patent uses the word ribbon but not the other three terms. So all four terms have to be addressed. But what are the consequences of our finding some but not all reversible or upheld? What are the different patterns? Yeah, if the Court were to reverse some but not all, then some claims would still be standing and some would not. But if you reverse even just one, the case is still alive. And if Your Honor has no further questions about that issue, then I'll turn to the question of the continuous microtexture skin layer. And even in the last ten minutes, this counsel is bouncing back and forth on whether the microtexturing must be substantial or continuous. And there's nothing in the intrinsic evidence showing the microtexturing must be continuous. And again, he had no response to my point about how continuous microstructured surface appears in a Hanschen patent. And everyone agrees that the Hanschen patent doesn't have continuous microtexturing because you have the zones, the preferential activation zones, and the non-preferential activation zones. You have some microtexturing, some non-microtexturing, and yet we see that exact same phrase on page 97 of the Joint Appendix. Continuous microstructured surface. That appears in the Hanschen patent. And therefore, continuous cannot be modifying microstructured or microtextured. The microtexturing cannot be continuous because the same phrase appears in the Hanschen patent. So you can put aside the word games, put aside the grammatical plays, the grammar supports us, but looking even just solely at the specification, it is clear that continuous does not modify microtexturing. But so continuous skin layer, though, there's no doubt that it covers the entire laminate, right? The skin layer covers substantially the entire laminate. That's what the skin layer does. And as for the microtexturing, the microtexturing could be held to be substantial. That isn't in the term itself, but the point is that wasn't what the district court held. That wasn't Kredegar's proposal. Kredegar's proposal, the district court's holding was the microtexturing has to be continuous, and that's error. It's erroneous under the rules of grammar, and it's erroneous under the specification. Again, the Hanschen specification also uses the phrase continuous microstructured surface. And we know the Hanschen doesn't have continuous microstructure. Okay, we're out of time. Anybody have any more questions? No. Thank you.